IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 07-765-SLR |
| JOHNSON & JOHNSON, INC. and CORDIS CORPORATION, | ) ) ) | |
| Defendants. | ) ) | |

## ADDITIONAL JOINT REPORT FOR
## SCHEDULING CONFERENCE DATED FEBRUARY 21, 2008

Plaintiffs Boston Scientific Corporation and Boston Scientific Scimed, Inc.

(collectively "BSC ") and defendants Johnson & Johnson, Inc. and Cordis Corporation

(collectively "Cordis") submit this additional Joint Report in advance of the telephonic

scheduling conference in this action set for February 21, 2008.

Cordis and BSC agree that this action should proceed on the same schedule as the

related Case Nos. 07-333, 07-348 and 07-409 between the parties pending in this Court.

Therefore, the parties have already jointly submitted to the Court a proposed scheduling order for

this case that is identical in all respects to the one already entered in those three related cases

and, together, respectfully request that the Court enter that same scheduling order in this case.

There is, however, disagreement between the parties as to the degree that discovery in this case

should be coordinated with discovery in Cordis' pending New Jersey patent infringement case

against Abbott. The parties' positions are set forth below.

## BSC'S POSITION

As an initial matter, BSC respectfully notes this Joint Report is being submitted to the Court solely at the behest of Cordis.  When Cordis suggested that the parties submit this Joint Report as part of the their papers relating to the February 21 teleconference, BSC explained its understanding to Cordis that the purpose of this teleconference was to set the scheduling order in the 07-765 declaratory judgment action brought by BSC against Abbott.[1]  In that regard, the parties have provided the Court with an agreed, proposed scheduling order for this case, which is identical to the scheduling orders previously entered by this Court to govern each of BSC's three related actions (07-333, 07-348 and 07-409) now pending against Cordis.  Nevertheless, Cordis insisted on submitting this Joint Report, whether or not BSC was willing to participate in it, so BSC agreed to set forth its response to Cordis' arguments herein.

Cordis' "position", as set forth below, is really a speaking motion to consolidate all discovery in BSC's four, related cases in this Court with discovery in the pending Cordis actions against Abbott in the District of New Jersey.  Cordis even indirectly suggests in the statement of its "position" on such consolidation that the Court also could resolve all of Cordis' concerns by simply transferring all four of BSC's actions against it to New Jersey.  Of course, the parties already have fully briefed Cordis's request to transfer these four BSC cases, and this Court recently denied Cordis' request that it do so.

BSC respectfully submits that Cordis's arguments more properly should be presented to the Court in a formal motion, where each side would have a full opportunity to brief the issues.  Even setting that aside, Cordis' position neither accurately presents BSC's stance on cooperating in discovery nor explains in sufficient detail Cordis' proposal for such cooperation to allow for a full assessment and response to same.

---

[1]    *See* February 18 e-mail, attached hereto as Exhibit F.

Contrary to Cordis' assertion, BSC has been and remains ready and willing to cooperate with Cordis and Abbott in coordinating discovery between BSC's four, related Delaware actions and the actions pending in New Jersey between Cordis and Abbott. BSC previously explained its willingness in that regard to Cordis in writing. See Exhibit F hereto. BSC has no interest in pursuing duplicative discovery between the two sets of cases or forcing others to do so. However, BSC should not be prejudiced by having Cordis' one-sided "consolidation" proposal imposed upon it, particularly since BSC has always expressed its interest to Cordis in further discussing a fair manner of coordinating at least certain aspects of discovery, in a manner that will not unfairly prejudice it.

Cordis' discovery consolidation proposal presented four, overly broad and general items on which Cordis sought agreement: (1) each witness will be deposed only once as between both the Delaware and New Jersey cases; (2) discovery in the BSC Delaware cases can be used in the Abbott New Jersey cases and vice versa; (3) a "common protective order" shall govern both the Delaware and New Jersey cases; and (4) the parties in one case shall receive notice of all discovery in the other case. In response, BSC wrote that it would be happy to work with Cordis and Abbott to coordinate at least certain aspects of discovery for the purpose of saving the time and resources of all parties and both Courts, where it is appropriate and not prejudicial to BSC's interests in its four cases. However, and although it remains willing to discuss a fair and reasonable coordination of discovery among the parties in these cases, BSC could not agree to Cordis' blanket proposals as they are manifestly prejudicial to BSC.

For example, BSC can envision many instances where it might not find it necessary to depose a Cordis witness if that witness already had been deposed by Abbott and BSC had reviewed and was satisfied with the transcript. In many more instances (such as for

3

named inventors and experts), where the litigation and trial strategies and approaches of BSC and Abbott may differ, it simply would not be fair to force either party to choose between: (1) limiting itself to watching while the other party takes a critical deposition or (2) getting only a half-day of deposition time with that critical witness while the other party gets the other half of the day (or get only half of the time for that deposition, if longer than a day).  Moreover, since the DE and NJ cases are not necessarily proceeding on the same schedule, it would be unfair to force BSC to depose a given Cordis witness at a time noticed by Abbott, if that timing did not fit with BSC's strategy and the schedule in the BSC cases in Delaware.  Likewise, it would be even more unfair to force BSC to wait until Abbott is ready to depose a given Cordis witness if BSC's strategy - or the Delaware schedule - deems it is the appropriate time to take that witness in its Delaware cases.  Such a conflict, with the resultant prejudice to BSC, is extremely likely to occur under Cordis' blanket consolidation proposal since the BSC Delaware cases have a definite trial date in August, 2009 and the Abbott New Jersey cases do not.

BSC also informed Cordis that is was willing to discuss Cordis' proposal that discovery in the Abbott cases can be used in the BSC cases and vice versa.  See Exhibit F hereto [February 18 e-mail].  However, as it wrote to Cordis previously, BSC believes this question must be taken up on a case-by-case basis to ensure fairness to all parties, and there needs to be much more detail in Cordis' proposal before BSC could agree to its framework.  *See id.*  For example, as written in its present, broad form, BSC has evidentiary concerns about the scope of what is meant by discovery in the Abbott cases "can be used" in the BSC cases and vice versa (for what purpose and to what extent can such discovery from one case be used in the other?).

As for a "common protective order" governing both sets of cases, BSC wrote to Cordis that it did not seem workable given that the cases are proceeding in separate jurisdictions,

but certainly the protective order in these Delaware cases could reference any agreement reached

by BSC and Cordis regarding discovery from the New Jersey Abbott actions (just as most

protective orders provide for how to deal with and accommodate third-party discovery).

Finally, BSC told Cordis it was not certain what the intended scope was of Cordis' proposal that

"all parties should receive notice of all discovery," but BSC believes this is an item about which

the parties should be able to reach some agreement after further discussion (e.g., presumably,

under Cordis' proposal, each party should notify the others of its intent to take a deposition

through a notice of deposition, which is reasonable to BSC).

Thus, far from refusing to cooperate, BSC has been and remains more than

willing to discuss with Cordis a reasonable and fair proposal for coordinating at least some of the

aspects of discovery between these two sets of cases. Cordis' proposal, however, was neither

fair nor reasonable. BSC's Delaware cases remain separate cases from the Cordis cases against

Abbott in New Jersey, as they should be for all of the reasons expressed in BSC's successful

opposition to Cordis' attempt to transfer these four cases to New Jersey. Essentially, Cordis is

attempting to achieve a *de facto* reversal of this Court's standing denial of its transfer motion

through this Joint Report and its suggested consolidation of discovery (indeed, Cordis admits as

much in its last footnote urging transfer to New Jersey again, in place of consolidation). Cordis

should not be permitted to prejudice BSC through imposition of its unilateral and one-sided

"discovery consolidation" proposal, particularly since BSC remains willing to cooperate and

discuss a proposal that is both fair to all and recognizes that these Delaware cases are separate

from the New Jersey actions.

**CORDIS'S POSITION**

The present Delaware BSC case and the Abbott New Jersey cases Abbott concern the same patents and accused products and raise identical issues. These cases are manufacturer/customer patent infringement cases -- i.e., the accused BSC products in this case are manufactured for BSC by Abbott and are also accused products in the earlier filed New Jersey lawsuit against Abbott. Once BSC obtains FDA approval, it will simply resell the products under its own "Promus" brand name. Because the accused products are the same in the present case as in the earlier filed New Jersey case, Cordis moved to transfer the present case to New Jersey, where it could be consolidated with the Abbott lawsuit. That motion was denied by the Court in an Order dated January 25, 2008. (D.I. 14.) An important factor in the Court's ruling was that it was not clear at this stage whether the New Jersey case would actually proceed to trial first (though both cases are currently on the same pretrial schedule). As the patent owner that is injured by the manufacture and sale of infringing products by Abbott and BSC, Cordis favors the earliest possible trial date.

Although Cordis is not asking the Court to reconsider its denial of the transfer motion, it believes that, at a minimum, discovery in the two lawsuits should be closely coordinated to maximize efficiency and to avoid repetitive and redundant depositions. Because BSC is Abbott's customer, Cordis understands that BSC and Abbott are working together in the defense of the patent infringement claims in the two cases. Indeed, since Abbott makes the product accused in both lawsuits, it may well be the real party in interest in both cases. There is no legitimate reason why discovery should not be coordinated in these cases.

Both BSC and Abbott, however, have thus far refused to agree to coordinate the discovery in the BSC cases with discovery on the Abbott cases in New Jersey that involve the

exact same patent and accused product as the BSC cases, and are proceeding on the very same schedule. Without coordination of discovery, there will be an enormous duplication of effort and waste of resources for the parties and third parties in these cases.

The discovery in the BSC cases and the earlier filed Abbott cases in New Jersey will be virtually the same. All of the patents at issue in the BSC cases are also at issue in the Abbott cases. The products are the same as well. As BSC admits, the BSC Promus stent is merely a private-label version of Abbott's Xience stent manufactured by BSC for Abbott pursuant to a supply agreement. (D.I. 24 at 4.) Abbott and BSC are therefore closely related as manufacturer and customer with respect to the accused product. The discovery and issues in both sets of cases will be virtually identical – including the patents-in-suit, Cordis' Cypher product, the development of the Xience/Promus stent, and the prior art. Discovery in both cases is also proceeding on the same schedule.[2]

Following the Court's order, Cordis attempted to reach an agreement to coordinate discovery with Abbott and BSC, but the very problems Cordis sought to avoid by its transfer motion were realized. Cordis asked both BSC and Abbott to agree to coordinate discovery, including that (1) witnesses will only be deposed once, and those depositions can be used in both the Abbott and BSC cases; (2) discovery taken in the Abbott cases can be used in the BSC cases and vice versa; and (3) a common Protective Order will apply to the Abbott and BSC cases.[3] BSC and Abbott, however, responded that they would not agree to such coordination but instead want to consider each deposition and other discovery matter up on a

---

[2] Compare Magistrate Judge Bongiovanni's scheduling order in the New Jersey actions (attached hereto as Exhibit A) with Scheduling Order in C.A. No. 07-333-SLR (D.I. 19) (Nov. 20, 2007).
[3] See February 11, 2008 e-mail from Cordis's counsel to Boston Scientific's counsel (Exhibit B); February 11, 2008 e-mail from Cordis's counsel to Abbott's counsel (Exhibit C); February 13, 2008 e-mail from Cordis's counsel to Boston Scientific's counsel (Exhibit D).

case-by-case basis so that they can unilaterally force duplicative discovery when it is in their interest to do so.[4] For example, BSC and Abbott have stated that depositions would have to be taken up individually on a case-by-case basis and that agreement that a witness be deposed once for both cases "likely will not be the case in many instances."[5]

Without an agreement or order coordinating discovery, the identical discovery may have to be taken twice, resulting in an enormous waste of resources. For example, Cordis's employees and former employees will likely be deposed two separate times (once by Abbott and once by BSC) on the very same issues – such as the patents-in-suit, Cordis' Cypher stent development, the commercial success of the Cypher stent, and damages issues. Cordis may have to depose the developers of the Xience/Promus stent twice – once for use in the Abbott cases in New Jersey and once in this case. Similarly, third parties may end up being deposed twice as well since the depositions cannot be used against Abbott if taken in the BSC case or vice versa. And, if there is no agreement that discovery in the Abbott case can be used in the BSC cases, Cordis will have to subpoena Abbott and take extensive, duplicative third party discovery of Abbott, the developer and manufacturer of the Xience/Promus stent, which will be identical to the discovery taken in the Abbott New Jersey actions.

Abbott's and BSC's apparent strategy is to take advantage of the pendency of two cases involving the same issues in different districts to impede discovery, create waste and inefficiency, and ultimately delay trial of both cases. To prevent this, Cordis respectfully requests that the Court enter an order that BSC coordinate discovery with Abbott, including that: witnesses will only be deposed once, and those depositions can be used in both the Abbott and

---

[4] *See* February 14, 2008 e-mail from Abbott's counsel to Cordis's counsel (Exhibit E); February 18, 2008 e-mail from BSC's counsel to Cordis's counsel (Exhibit F).
[5] *Id.*

BSC cases; discovery taken in the Abbott cases can be used in the BSC cases and vice versa; and

to the extent possible a common Protective Order will apply to the Abbott and BSC cases.


YOUNG CONAWAY STARGATT                    ASHBY & GEDDES
      & TAYLOR LLP

*/s/ Karen E. Keller*                              */s/ Steven J. Balick*
_____            _____
Josy W. Ingersoll (I.D. #1088)                 Steven J. Balick (I.D. #2114)
Karen E. Keller (I.D. #4489)                    John G. Day (I.D. #2403)
The Brandywine Building                         Lauren E. Maguire (I.D. #4261)
1000 West Street, 17th Floor                    500 Delaware Avenue, 8th Floor
Wilmington, DE  19801                           P.O. Box 1150
302-571-6600                                    Wilmington, Delaware  19899
*Attorneys for Plaintiffs*                       302-654-1888
                                                *Attorneys for Defendants*


188418.1

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CORDIS CORPORATION** | Civil Action No.: 07-2265 (JAP) |
| Plaintiff, | |
| v. | **PRETRIAL SCHEDULING ORDER** |
| **ABBOTT LABORATORIES** | |
| Defendant. | |
| **CORDIS CORPORATION** | Civil Action No.: 07-2477 (JAP) |
| Plaintiff, | |
| v. | **PRETRIAL SCHEDULING ORDER** |
| **ABBOTT LABORATORIES** | |
| Defendant. | |
| **CORDIS CORPORATION** | Civil Action No.: 07-2728 (JAP) |
| Plaintiff, | |
| v. | **PRETRIAL SCHEDULING ORDER** |
| **ABBOTT LABORATORIES** | |
| Defendant. | |
| **CORDIS CORPORATION** | Civil Action No.: 07-5636 (JAP) |
| Plaintiff, | |
| v. | **PRETRIAL SCHEDULING ORDER** |
| **ABBOTT LABORATORIES** | |
| Defendant. | |

This matter having come before the Court during an initial conference, pursuant to Fed. R. Civ. P. 16; and the Court having considered the positions of the parties; and good cause having been shown,

IT IS on this 22 day of January, 2008,

ORDERED THAT:

1. In accordance with Fed. R. Civ. P. 26(a)(1), initial disclosure has been made.

2. Any motion to join new parties, whether by amended or third-party complaint, must be filed no later than June 13, 2008 and made returnable on July 7, 2008.

3. Any motion to amend the pleadings must be filed no later than June 13, 2008 and made returnable on July 7, 2008.

4. The Court shall conduct an in-person discovery status conference on May 16, 2008 at 11:30 A.M. No motions to compel or motions for protective order shall be filed absent approval of the court.

5. The parties will have until August 22, 2008, to conclude all fact discovery in this matter. No discovery will issue beyond that date, except upon motion and for good cause shown.

    a.    Document production shall be completed no later than April 11, 2008;

    b.    In accordance with Fed. R. Civ. P. 33 the parties shall be limited to twenty-five (25) interrogatories (including all subparts) per party to any other party, except upon leave of Court;

    c.    In the absence of agreement among the parties, contention interrogatories, if filed, shall first be addressed by the party with the burden of proof no later than the date established for the completion of document production, with the responsive answers due within thirty (30) days thereof. The adequacy of all such interrogatory answers shall be judged by the level of detail each party provides; i.e., the more detail a party provides, the more detail a party shall receive;

    d.    The parties shall be limited to a maximum of thirty (30) requests for admission by each party to any other party;

    e.    The parties shall be limited to a maximum of 125 hours each for fact depositions by plaintiff(s) and by defendant(s);

    f.    In the absence of agreement among the parties or by order of the court, no deposition (other than those noticed under Fed. R. Civ. P. 30(b)(6)) shall be scheduled prior to the completion of document production.

6.  Counsel will confer in an attempt to resolve any discovery or case management disputes before making such dispute the subject of a motion.  No discovery motion will be entertained absent counsel's full compliance with <u>L. Civ. R.</u> 37.1(a)(1); *see also* <u>L. Civ. R.</u> 16.1(f).

7.  Expert discovery shall be commenced in time to be completed by <u>November 28, 2008</u>.

8.  Expert reports on issues for which the parties have the burden of proof shall be served no later than <u>October 3, 2008</u>.

9.  Rebuttal expert reports shall be served no later than <u>October 31, 2008</u>.

10.  No expert shall testify at the time of trial as to any opinions, nor base those opinions on facts, not substantially disclosed in any report as described in the preceding paragraphs.

11.  Expert depositions, if any, may be conducted as late as within <u>two weeks</u> after the Final Pretrial Conference.

12.  As a default, expert depositions are limited to <u>10 hours per deposition</u> with the understanding that the parties will work together to extend the time for experts that cover more than one subject or where the parties feel they need additional time.

13.  If willfulness has been asserted and absent agreement among the parties, the court will convene a telephone conference approximately two months before the close of fact discovery to discuss procedural and discovery matters pertaining to willfulness in light of recent changes in the law.

14.  Supplementations under <u>Fed. R. Civ. P.</u> 26(e) are due <u>July 11, 2008</u>.

15.  A settlement conference will be set at the time of the aforementioned in-person discovery status conference.  No later than seven days prior to the settlement conference, each party is to deliver to the Court a confidential letter, <u>NOT to exceed 5 pages in total</u>, summarizing the relevant facts, the respective legal positions, status of the case, and the client's position of settlement.  Trial counsel and clients with full settlement authority are to be present <u>IN PERSON</u> at the conference.  Any failure in this regard shall result in the imposition of sanctions.

16.  If the court does not find that an earlier claim construction would be helpful in resolving the case, the parties shall exchange lists of those claim terms that they believe need construction and their proposed claim construction of those terms <u>thirty (30) days before the end of fact discovery</u>.  This document will not be filed with the court.  Subsequent to exchanging such lists, the parties will meet and confer to prepare a Joint Claim Construction Statement to be submitted pursuant to paragraph 17 below.

17.  Lawyers must identify during the claim construction phase of the case any claim language that will have a meaning to a person of ordinary skill in the art that differs from the ordinary meaning.  Any language not so identified will be construed according to its ordinary dictionary meaning.  The parties shall agree upon and file the Joint Claim Construction Statement on <u>December 19, 2008</u>, with the claim chart separately docketed.  The parties shall file simultaneous opening claim construction briefs on <u>January 23, 2009</u>.  Simultaneous response briefs shall be filed no later than <u>February 20, 2009</u>.  Issues of claim construction shall be considered by

the court in conjunction with the parties' summary judgment motion(s). The hearing on the claim construction and motion(s) for summary judgment will be heard on a date to be set by the court.

18.  A final pretrial conference will be held before the undersigned on a date to be later set by the court.

19.  At the pretrial conference counsel should be prepared to discuss settlement of the case.  Clients must be available by telephone.

20.  The attorneys for all parties are further directed to meet together by agreement, initiated by counsel for the plaintiff no later than ten (10) days before the date of the pretrial conference to:

    a.    discuss settlement;

    b.    stipulate to as many facts and issues as possible;

    c.    prepare a Final Pretrial Order in the form and content as required by the Court.  Plaintiff's counsel will prepare the Final Pretrial Order and will submit it to all other counsel for approval and execution.  The original and one copy of the executed Final Pretrial Order will be delivered to the pretrial conference.  All counsel are responsible for the timely submission of the Final Pretrial Stipulation and Order;

    d.    examine all exhibits and documents proposed to be used at trial;

    e.    complete all other matters which may expedite both the pretrial and trial of the case;

    f.    an original and one copy of the proposed Final Pretrial Order is to be submitted five (5) days in advance of the conference;

    g.    appropriate markers shall be affixed to the exhibits at or prior to the time they are shown to opposing counsel at the meeting of counsel referred to above, and each marker will bear the number of the exhibit to which it is affixed.

21.  Any proposed confidentiality order agreed to by the parties must be accompanied by a separate statement showing specific good cause for the entry of the order and must comply with L. Civ. R. 5.3.

22.  The Court may, from time to time, schedule conferences as may be required, either on its own motion or at the request of the parties.

23.  Since all dates set forth herein are established with the assistance and knowledge of the parties, there will be no extensions except for good cause shown and by leave of Court, even with consent of all parties.

24.  Failure to appear at subsequent conferences, or to comply with any of the terms of this Order, may result in sanctions.

25.  The parties are advised that the Court has various audio/visual and evidence presentation equipment available for use at trial at no cost to the parties.  This equipment includes an evidence presentation system, which consists of a document camera and a projector.  The

projector may be used to display images which originate from a variety of sources, including television, VCR and personal computer. The document camera may be used to display documents, photographs, charts, transparencies and small objects. For further information, please contact the Courtroom Deputy Mark Morelli.

26.    An original copy of any letter memoranda that is faxed or emailed to chambers should <u>NOT</u> be mailed to Chambers, unless specifically advised otherwise. All proposed orders and letter memoranda emailed to chambers should be in WordPerfect format and emailed to: tjb_orders@njd.uscourts.gov. Any letter may be faxed to (609) 989-0435. Any filings with the Clerk of the Court should be in PDF format.

27.    <u>Counsel MUST NOT file correspondence, including discovery or status letters, via CM/ECF unless instructed by the Court.</u> Chambers will not receive notice of any such postings. If Counsel wish to have correspondence entered onto the Court docket, they may include this request in the correspondence to the undersigned.

28.    Counsel are invited to use the George H. Barlow Attorney Conference Room located on the third floor of the Courthouse Annex. The room is equipped with telephones, laptop and printer access, copier, and facsimile.

/s/ Tonianne J. Bongiovanni
TONIANNE J. BONGIOVANNI,
United States Magistrate Judge

# EXHIBIT B

## JDay

**From:**     Cass, Russell E. [rcass@Sidley.com]
**Sent:**     Monday, February 11, 2008 12:59 PM
**To:**       prichter@kenyon.com
**Subject:** BSC v. Cordis -- Discovery

Paul:

In light of the fact that the cases involving BSC in Delaware and Abbott in New Jersey involve the same patents and accused products, and most (if not all) of the discovery will be the same, we think it makes sense to coordinate the discovery in the actions.  In particular, we think it makes sense to agree that (1) witnesses will only be deposed once, and those depositions can be used in both the Abbott and BSC cases; (2) discovery taken in the Abbott case can be used in the BSC cases and vice versa; and (3) a common Protective Order will apply to the Abbott and BSC cases.

Please let me know if you agree.

Thank you.

Russ

# EXHIBIT C

## JDay

| | |
|---|---|
| **From:** | Cass, Russell E. [rcass@Sidley.com] |
| **Sent:** | Monday, February 11, 2008 1:06 PM |
| **To:** | emas@mcandrews-ip.com; lhansen@mcandrews-ip.com; jhafertepe@mcandrews-ip.com |
| **Subject:** | Cordis v. Abbott -- Discovery |

Gentlemen:

As I mentioned on the phone to Jim last week, in light of the fact that the cases involving BSC in Delaware and Abbott in New Jersey involve the same patents and accused products, and most (if not all) of the discovery will be the same, we think it makes sense to coordinate the discovery in the actions.  In particular, we think it makes sense to agree that (1) witnesses will only be deposed once, and those depositions can be used in both the Abbott and BSC cases; (2) discovery taken in the Abbott cases can be used in the BSC cases and vice versa; and (3) a common Protective Order will apply to the Abbott and BSC cases.

Please let me know as soon as possible if you agree to this approach.

Thank you.

Russ

# EXHIBIT D

**JDay**

| | |
|---|---|
| **From:** | Cass, Russell E. [rcass@Sidley.com] |
| **Sent:** | Wednesday, February 13, 2008 2:28 PM |
| **To:** | Richter, Paul |
| **Cc:** | SBalick; Pascale, Karen; Keller, Karen; Ingersoll, Josy; DeLucia, Richard; Levy, Michael; Scott, Christopher; Pritikin, David T.; Spanbauer, Jon M.; Hein, Andrew R. |
| **Subject:** | RE: 2/21 Discovery Teleconference in 07-765 Action |

Paul:

We are amenable to consolidating the four pending actions into one case, and putting them all on the same schedule previously entered.  However, as I mentioned in my e-mail to you on Monday, we think that the discovery in these actions should be coordinated with the Abbott actions in New Jersey that involve the same patents and accused product.  Among other things, we propose that the parties agree that: (1) witnesses will only be deposed once for both sets of cases; (2) discovery from the Abbott cases can be used in the BSC cases and vice versa; (3) a common Protective Order would apply to both sets of cases; and (4) all parties should receive notice of all discovery.  Otherwise, there will be a great deal of duplication of effort, which will cause a significant burden for all the parties, as well as third party witnesses.

Please let me know whether you agree, or whether this is something we will need to take up with Judge Robinson.

Thanks.

Russ

> **From:** Richter, Paul [mailto:PRichter@kenyon.com]
> **Sent:** Wednesday, February 13, 2008 12:26 PM
> **To:** Richter, Paul; Cass, Russell E.; Steve Balick
> **Cc:** Pascale, Karen; Keller, Karen; Ingersoll, Josy; DeLucia, Richard; Levy, Michael; Scott, Christopher
> **Subject:** RE: 2/21 Discovery Teleconference in 07-765 Action
>
> Russ & Steve, as a follow up to the below, BSC also proposes that the parties jointly request by motion to the court that the four pending actions (07-333, -348, -409 and -765) be formally consolidated into one case. This makes sense to us since the former three cases have the identical scheduling orders in place and we think the latter one should as well.  Please let us know Cordis's position on this proposal also.
>                    Thanks, Paul

> **From:** Richter, Paul
> **Sent:** Wednesday, February 13, 2008 11:58 AM
> **To:** 'Cass, Russell E.'; Steve Balick
> **Cc:** Pascale, Karen; 'Keller, Karen'; Ingersoll, Josy; DeLucia, Richard; Levy, Michael; Scott, Christopher
> **Subject:** 2/21 Discovery Teleconference in 07-765 Action
>
> Dear Russ & Steve,
>
>        In advance of the 2/21 scheduling teleconference before Judge Robinson in the 07-765 action, BSC proposes that the scheduling order in that case be identical to the three scheduling orders already entered in the related cases, namely 07-333, 07-348 and 07-409.  Please let me know if that's acceptable to your client, so that we can jointly inform the Court in advance of the 2/21 teleconference.
>
>        Thanks, Paul

# EXHIBIT E

## JDay

| | |
|---|---|
| **From:** | JHAFERTEPE@mcandrews-ip.com |
| **Sent:** | Thursday, February 14, 2008 5:58 PM |
| **To:** | Cass, Russell E.; EMAS@mcandrews-ip.com; LHANSEN@mcandrews-ip.com |
| **Subject:** | RE: Cordis v. Abbott -- Discovery |

Russ,

Thank you for your email.

For the sake of efficiency, where possible and reasonable, Abbott certainly is in favor of coordinating discovery between the *Cordis v. Abbott* NJ actions and the corresponding *BSC v. Cordis* DE actions to the extent our client's interests are not compromised.

With respect to depositions (your point 1), the parties likely will need to take them up on a case-by-case basis. Certainly, if Cordis proposes to depose a witness for both cases, one deposition should be sufficient. There also may be instances where a single deposition of a Cordis witness may suffice for the cases pending in both jurisdictions. However, that likely will not be the case in many instances. As I am sure you can appreciate, like Abbott and Cordis, Abbott and BSC are direct competitors. Abbott and BSC may have different defenses, different approaches to their defenses, and different case strategies in their respective actions. On the issue of timing alone, Abbott may want to depose a particular witness at an earlier or later time than BSC. Of course, if BSC deposes a Cordis witness before Abbott, Abbott would be amenable to consulting the BSC transcript in order to make the deposition more efficient for the witness. That said, Abbott obviously will need, and is entitled to, sufficient time with each witness to fairly pursue its defenses and counterclaims. As noted above, Abbott favors efficiencies where possible, but not to the point of hindering Abbott's interests or ability to defend itself properly.

With respect to your proposal to share all discovery across the cases (your point 2), Abbott is open to discussing the sharing of certain discovery where it makes sense. However, Abbott cannot agree at this point to a blanket proposal where, for example, BSC -- a direct competitor -- has free access to all of Abbott's confidential and sensitive information, including information that is unnecessary or not pertinent to the *BSC v. Cordis* actions. I would expect that BSC may feel the same way about having all of its information disclosed to Abbott. Moreover, without a more detailed explanation of your proposal, Cordis' suggestion that it could use any discovery from BSC in the Abbott cases (and vice versa) does not seem practical.

Finally, with respect to a protective order (your point 3), we do not fully understand what you mean by a "common Protective Order." As you know, the parties' cases are proceeding in two different courts with different criteria for protective orders. Moreover, injecting a third party from separate cases in a different jurisdiction likely will complicate and unnecessarily delay finalizing the protective order terms. In short, we think that attempting to agree on, and operate under, a single protective order across all of the cases may cause more problems than it will solve.

As always, we remain available to discuss reasonable and fair ways for improving the efficiencies of these cases. If you want to discuss these or any other proposals further, please let us know.

Regards,

Jim

---

**From:** rcass@Sidley.com [mailto:rcass@Sidley.com]
**Sent:** Monday, February 11, 2008 12:06 PM
**To:** Ed Mas; Leland Hansen; Jim Hafertepe
**Subject:** Cordis v. Abbott -- Discovery

Gentlemen:

As I mentioned on the phone to Jim last week, in light of the fact that the cases involving BSC in Delaware and Abbott in New Jersey involve the same patents and accused products, and most (if not all) of the discovery will be the same, we think it makes sense to coordinate the discovery in the actions. In particular, we think it makes sense to agree that (1) witnesses will only be deposed once, and those depositions can be used in both the Abbott and BSC cases; (2) discovery taken in the Abbott cases can be used in the BSC cases and vice versa; and (3) a common Protective Order will apply to the Abbott and BSC cases.

Please let me know as soon as possible if you agree to this approach.

Thank you.

Russ

```
Sidley Austin LLP mail server made the following annotations on 02/11/08, 12:01:43:
------------------------------------------------------------------------------------
IRS Circular 230 Disclosure: To comply with certain U.S. Treasury regulations, we inform you
that, unless expressly stated otherwise, any U.S. federal tax advice contained in this
communication, including attachments, was not intended or written to be used, and cannot be
used, by any taxpayer for the purpose of avoiding any penalties that may be imposed on such
taxpayer by the Internal Revenue Service.  In addition, if any such tax advice is used or referred
to by other parties in promoting, marketing or recommending any partnership or other entity,
investment plan or arrangement, then (i) the advice should be construed as written in connection
with the promotion or marketing by others of the transaction(s) or matter(s) addressed in this
communication and (ii) the taxpayer should seek advice based on the taxpayer's particular
circumstances from an independent tax advisor.

*********************************************************************************************
This e-mail is sent by a law firm and may contain information that is privileged or confidential.
If you are not the intended recipient, please delete the e-mail and any attachments and notify us
immediately.

*********************************************************************************************
```

http://www.mcandrews-ip.com

```
**************************************************
```

CONFIDENTIALITY NOTICE:

This Material is intended for the named recipient and, unless
otherwise expressly indicated, is confidential and privileged
information. Any dissemination, distribution or copying of
this material is prohibited. If you received this message in
error, please notify the sender by replying to this message
and then delete it from your system. Your cooperation is
appreciated.

```
**************************************************
```

# EXHIBIT F

**JDay**

| | |
|---|---|
| **From:** | Richter, Paul [PRichter@kenyon.com] |
| **Sent:** | Monday, February 18, 2008 10:45 PM |
| **To:** | Cass, Russell E. |
| **Cc:** | SBalick; Pascale, Karen; Keller, Karen; Ingersoll, Josy; DeLucia, Richard; Levy, Michael; Scott, Christopher; Pritikin, David T.; Spanbauer, Jon M.; Hein, Andrew R. |
| **Subject:** | RE: 2/21 Discovery Teleconference in 07-765 Action |

Dear Russ,

We've now had a chance to fully discuss with our client your 2/13 e-mail regarding coordination of discovery in the four BSC v. Cordis/J&J actions pending in DE (07-333; 07-348; 07-409; and 07-765) with Cordis's pending actions in NJ against Abbott. We've just received and reviewed your e-mail of earlier today forwarding a draft joint "Report" that Cordis wants to submit to the Court in advance of the parties' 2/21 teleconference in the 07-765 action.

Initially, we note that the Court's 1/28 order setting the 2/21 teleconference in the 07-765 action does not appear to us to call for the submission of the kind of joint Report that you sent us. Your draft Report reads more like a speaking motion to consolidate all aspects of discovery in all four of BSC's above DE actions with Cordis's pending NJ actions against Abbott and, after urging such global consolidation, concludes by arguing that the Court could remedy Cordis's concerns by simply transferring all four of BSC's DE actions to NJ.

In contrast, the Court's 1/28 order states that the parties should meet and confer regarding discovery in the 07-765 case and jointly submit a proposed scheduling order to the Court for that case, no fewer than 24 hours before the (now 5pm) 2/21 teleconference. In accordance with that directive, and following up on our prior proposal, we will forward to you tomorrow a draft scheduling order for the 07-765 case that is identical to the one already entered by the Court to govern each of the 07-333, 07-348 and 07-409 cases. We take from your below message that you agree to such a scheduling order and would appreciate your confirmation of same on receipt and review of our draft proposal tomorrow, so that we can submit that draft to the Court by 5 pm on 2/20

With regard to your 2/13 proposal, BSC is happy to work with Cordis and Abbott to coordinate certain aspects of discovery in its 4 DE actions with discovery in the Cordis v. Abbott NJ actions to save the time and resources of all parties and both Courts, where it is appropriate and not prejudicial to BSC's interests in these cases. However, BSC cannot agree to the blanket proposals in your 2/13 e-mail, as they are unfair to BSC as written. For example, as for item 1 of your proposal (each witness will be deposed only once for both sets of cases), we can envision times where BSC would not find it necessary to depose a Cordis witness if that witness already had been deposed by Abbott and BSC was satisfied with the transcript. We can equally envision many instances (such as for named inventors and experts) where the litigation and trial strategies and approaches of BSC and Abbott may differ, such that it would not be fair to force either party to either: (1) limit itself to watching while the other party takes a critical deposition or (2) get only a half-day of deposition time with that witness while the other party gets the other half of the day (or get only half of the time for that deposition, if longer than a day). Moreover, since the DE and NJ cases are not necessarily proceeding on the same schedule, it would be unfair to force BSC to depose a given Cordis witness at a time noticed by Abbott, if that timing did not fit with BSC's strategy and the schedule in the BSC cases in DE (likewise, it wouldn't be fair to force BSC to wait until Abbott is ready to depose a given Cordis witness if BSC - or the DE schedule - deems it is the appropriate time to take that witness in its DE cases). On item 2 (discovery in the Abbott cases can be used in the BSC cases and vice versa), BSC is willing to work with Cordis on this proposal but believes it should be taken up on a case-by-case basis and in much more detail than your proposal. Your present position is simply too general to fully evaluate (e.g., BSC has evidentiary concerns about your proposal that discovery in the Abbott cases "can be used" in the BSC cases and vice versa). The "common protective order" (your item 3) does not seem workable given that the cases are in separate jurisdictions, but certainly the protective order in our case could reference any agreement reached by BSC and Cordis regarding discovery from the NJ Abbott actions (just as most protective orders provide for how to deal with and accommodate third-party discovery). Finally, while we're not certain of the intended scope of your item 4 ("all parties should receive notice of all discovery"), which might be broader than we would agree to, BSC believes this is an item about which the parties should be able to reach some agreement on further discussion (e.g., presumably, under your proposal, each party should notify the others of its intent to take a deposition through a notice of deposition).

Sincerely yours, Paul

---

**From:** Cass, Russell E. [mailto:rcass@sidley.com]
**Sent:** Monday, February 18, 2008 5:43 PM
**To:** Richter, Paul
**Cc:** Steve Balick; Pascale, Karen; Keller, Karen; Ingersoll, Josy; DeLucia, Richard; Levy, Michael; Scott, Christopher; Pritikin, David T.; Spanbauer, Jon M.; Hein, Andrew R.
**Subject:** RE: 2/21 Discovery Teleconference in 07-765 Action

Paul:

Since we have not heard from you concerning whether BSC will agree to coordinate discovery in the BSC and Abbott actions, we went ahead and prepared a proposed joint submission for the discovery teleconference on Thursday. I have left open a section for BSC's

discussion regarding coordination of discovery.   If you will agree to coordinate discovery as we have outlined, please let me know. Otherwise, we look forward to your comments to the submission.

Thank you.

Russ

---

**From:** Cass, Russell E.
**Sent:** Wednesday, February 13, 2008 1:28 PM
**To:** Richter, Paul
**Cc:** Steve Balick; Pascale, Karen; Keller, Karen; Ingersoll, Josy; DeLucia, Richard; Levy, Michael; Scott, Christopher; Pritikin, David T.; Spanbauer, Jon M.; Hein, Andrew R.
**Subject:** RE: 2/21 Discovery Teleconference in 07-765 Action

Paul:

We are amenable to consolidating the four pending actions into one case, and putting them all on the same schedule previously entered.  However, as I mentioned in my e-mail to you on Monday, we think that the discovery in these actions should be coordinated with the Abbott actions in New Jersey that involve the same patents and accused product.  Among other things, we propose that the parties agree that: (1) witnesses will only be deposed once for both sets of cases; (2) discovery from the Abbott cases can be used in the BSC cases and vice versa; (3) a common Protective Order would apply to both sets of cases; and (4) all parties should receive notice of all discovery.  Otherwise, there will be a great deal of duplication of effort, which will cause a significant burden for all the parties, as well as third party witnesses.

Please let me know whether you agree, or whether this is something we will need to take up with Judge Robinson.

Thanks.

Russ

---

**From:** Richter, Paul [mailto:PRichter@kenyon.com]
**Sent:** Wednesday, February 13, 2008 12:26 PM
**To:** Richter, Paul; Cass, Russell E.; Steve Balick
**Cc:** Pascale, Karen; Keller, Karen; Ingersoll, Josy; DeLucia, Richard; Levy, Michael; Scott, Christopher
**Subject:** RE: 2/21 Discovery Teleconference in 07-765 Action

Russ & Steve, as a follow up to the below, BSC also proposes that the parties jointly request by motion to the court that the four pending actions (07-333, -348, -409 and -765) be formally consolidated into one case.  This makes sense to us since the former three cases have the identical scheduling orders in place and we think the latter one should as well. Please let us know Cordis's position on this proposal also.
                         Thanks, Paul

---

**From:** Richter, Paul
**Sent:** Wednesday, February 13, 2008 11:58 AM
**To:** 'Cass, Russell E.'; Steve Balick
**Cc:** Pascale, Karen; 'Keller, Karen'; Ingersoll, Josy; DeLucia, Richard; Levy, Michael; Scott, Christopher
**Subject:** 2/21 Discovery Teleconference in 07-765 Action

Dear Russ & Steve,

        In advance of the 2/21 scheduling teleconference before Judge Robinson in the 07-765 action, BSC proposes that the scheduling order in that case be identical to the three scheduling orders already entered in the related cases, namely 07-333, 07-348 and 07-409.  Please let me know if that's acceptable to your client, so that we can jointly inform the Court in advance of the 2/21 teleconference.

                         Thanks, Paul

Sidley Austin LLP mail server made the following annotations on 02/18/08, 16:43:29:
--------------------------------------------------------------------------------
IRS Circular 230 Disclosure: To comply with certain U.S. Treasury regulations, we inform you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this communication, including attachments, was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of avoiding any penalties that may be imposed on such

taxpayer by the Internal Revenue Service.  In addition, if any such tax advice is used or referred to by other parties in promoting, marketing or recommending any partnership or other entity, investment plan or arrangement, then (i) the advice should be construed as written in connection with the promotion or marketing by others of the transaction(s) or matter(s) addressed in this communication and (ii) the taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor.

*********************************************************************************************

This e-mail is sent by a law firm and may contain information that is privileged or confidential. If you are not the intended recipient, please delete the e-mail and any attachments and notify us immediately.

*********************************************************************************************