IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BOSTON SCIENTIFIC CORPORATION and<br>BOSTON SCIENTIFIC SCIMED, INC., | ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | Civil Action No. 07-333-SLR<br>Civil Action No. 07-348-SLR |
| v. | ) ) | Civil Action No. 07-409-SLR<br>Civil Action No. 07-765-SLR |
| | ) | |
| JOHNSON & JOHNSON, INC. and<br>CORDIS CORPORATION, | ) ) ) | |
| Defendants. | ) ) | |

**BSC'S RESPONSES TO CORDIS'S FIRST SET OF INTERROGATORIES (Nos. 1-3)**

Pursuant to Fed. R. Civ. P. 26 and 33, Plaintiffs Boston Scientific Corp. and Boston

Scientific Scimed, Inc. (collectively, "BSC") hereby object and respond to Defendants Johnson

& Johnson, Inc. and Cordis Corporation's (collectively, "Cordis") First Set of Interrogatories

(Nos. 1-3), as follows:

## GENERAL OBJECTIONS

1.      BSC incorporates by reference the General Objections in BSC's Responses to Johnson & Johnson, Inc. and Cordis Corporation's First Set of Requests for the Production of Documents (Nos. 1-93).

2.      BSC objects to each interrogatory, and to Cordis's "Instructions" to the extent that they attempt to impose obligations beyond those imposed by the Federal Rules of Civil Procedure and/or by the Local Rules of the United States District Court for the District of Delaware.

3.      BSC objects to each interrogatory to the extent it calls for information that is protected by the attorney-client privilege and/or the work-product doctrine, or is otherwise immune from discovery.  Inadvertent disclosure of such information shall not constitute a waiver of any privilege or other basis for objecting to discovery, nor shall it constitute a waiver of the right of BSC to object to the use of, and/or seek the return of, any such information that may be inadvertently disclosed.

4.      BSC objects to each interrogatory to the extent that it seeks otherwise non-privileged information that contains confidential, proprietary, commercially-sensitive, or trade secret information.  BSC will provide such information, if any, only upon entry by the Court of a suitable confidentiality and protective order.

5.      BSC objects to each interrogatory to the extent that that it seeks information related to third-parties that is subject to a protective order, non-disclosure agreement, confidentiality agreement, or other obligation of confidentiality.

6.      BSC objects to each interrogatory to the extent that it seeks information that is neither relevant to any claim or defense in this action nor reasonably calculated to lead to the discovery of admissible evidence.

054604.1003

7.      BSC objects to each interrogatory to the extent that it purports to compel BSC to create information that does not already exist.

8.      BSC objects to each interrogatory to the extent that it is duplicative, repetitive, or seeks information included in other interrogatories.

9.      BSC objects to each interrogatory as unduly burdensome to the extent that it seeks information that is already in Cordis's possession, custody or control.

10.     BSC objects to each interrogatory to the extent that it is overly broad or unreasonable.

11.     BSC objects to each interrogatory to the extent that it is premature given that Cordis has not yet provided their proposed constructions of the asserted claims, provided the bases and supporting evidence for such proposed constructions, and/or provided the bases for Cordis's allegations of infringement of such asserted claims.

12.     BSC objects to each interrogatory to the extent that it is premature as expert discovery has not yet begun.

13.     BSC objects to each interrogatory to the extent that it calls for a legal conclusion.

14.     BSC objects to each interrogatory as overly broad and unduly burdensome to the extent that it seeks information regarding products not accused of infringing in this litigation.

15.     BSC objects to each interrogatory to the extent that it purports to define a word or phrase as used in any of the claims of the patents-in-suit.

16.     BSC objects to each damages-related interrogatory as overly broad and unduly burdensome to the extent it is not limited to the relevant time period or products for which alleged damages may be recovered.

3

17.     BSC's discovery and investigation of facts relevant to this litigation are ongoing. Accordingly, BSC reserves its rights to amend, modify, or supplement these responses as necessary and in accordance with Fed. R. Civ. P. 26(e).

18.     Unless otherwise indicated, BSC will not provide any information encompassed by the foregoing objections.

19.     The use of terms herein from the patents-in-suit should not be understood to mean that such terms as used in the patents-in-suit or claims thereof are definite or otherwise comply with the conditions of patentability under 35 U.S.C. § 112.

20.     The use of terms herein from the patents-in-suit should not be understood to suggest or imply a common, usual, ordinary, customary, plain, or accepted meaning in the art for any such term.

21.     The use of terms herein from the patents-in-suit should not be understood to mean that such terms constitute limitations of the claims of the patents-in-suit.

22.     BSC's objections and responses are subject to any agreements between the parties concerning discovery in this litigation.

23.     None of the objections or responses contained herein is an admission relative to the truth or accuracy of any statement or characterization contained in Cordis's interrogatories.

24.     All responses are made on an express reservation of the General Objections set forth above, and any specific objections set forth below.


**SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES**

**Interrogatory No. 1**

State in detail the complete factual and legal bases for your allegations that the asserted patents in these actions (including U.S. Patent Nos. 7,217,286, 7,223,286, 7,229,473 and 7,300,662) are invalid.  Your response should include, without limitation:  an identification of

4

each claim of the above patents that you contend is invalid; an identification of the applicable subsections of 35 U.S.C. §§ 102, 103, 112 and otherwise that you are relying on to prove invalidity of each claim; an identification of each prior art reference or combination of references which you contend invalidates each claim; and a claim chart identifying specifically where each element of each asserted claim is found in the prior art.  For each claim limitation, your chart should identify where in the prior art that claim limitation is allegedly found, with references to specific portions of the prior art by page, line, figure, description, or otherwise; the missing elements in the prior art and the reasons why such missing elements would have been obvious to a person of ordinary skill; to the extent you contend that a claim is obvious over a combination of references, the combination of references you rely on, which elements are present and not present in each reference, and the reasons why a person of ordinary skill would have combined those references to achieve the claimed invention; your construction of that claim limitation; an identification of whether that claim limitation should be construed under Section 112, Paragraph 6 and if so the corresponding structure, material, or acts described in the specification and equivalents thereof; and pinpoint cites to all evidence tending to support or refute your construction (e.g., the patent specification, related file history, dictionaries, and all other documents or expected testimony).  To the extent you intend to rely on an alleged prior invention, your response should describe in detail, the conception, reduction to practice (actual or constructive) and all activities constituting diligence from conception to reduction to practice. Your response should also include an identification of all facts supporting your invalidity allegations, all persons knowledgeable of these facts, and all documents and communications concerning you invalidity allegation in any way.

## Response to Interrogatory No. 1

BSC objects to this interrogatory as constituting multiple separate and distinct interrogatories in violation of Fed. R. Civ. P. 33(a).  BSC objects to this interrogatory to the extent it seeks information that is not relevant to the claims or defenses of the parties in this action or the subject matter of this action.

BSC objects to this interrogatory to the extent that it seeks information concerning non-asserted claims of the patents in suit and, accordingly, BSC will limit its response to those claims that have been identified by Cordis as asserted in these actions.  BSC understands that the asserted claims are:  claims 1-5 of U.S. Patent No. 7,217,286; claims 1, 2, 5–6, 9–10, 21, 25, 27, 28–41, 44, 47–48, 51–52, 63, 67, and 69–77 of U.S. Patent No. 7,223,286; claims 1–5 of U.S. Patent No. 7,229,473; and claims 1–3, 5–7, 9, 11, 13–15 and 17–25 of U.S. Patent No. 7,300,662.

BSC objects to this interrogatory as premature as Cordis has not specifically identified the earliest date to which each claim of the asserted patents is entitled to claim priority. BSC objects to this interrogatory as premature as Cordis has not specifically identified the dates of conception and reduction to practice for each claim of the asserted patents.

BSC further objects to this interrogatory as premature as the case is still in the early phases of discovery and the information sought is not in line with the sequence of information disclosure set up in the Court's Scheduling Order. With respect to claim construction, the Court's Scheduling Order provides a specific date for the parties to exchange proposed claim constructions, and it is unfairly burdensome, unreasonable and prejudicial to ask for detailed information regarding claim construction contentions prior to the date fixed by the Court. Similarly, the Court's Scheduling Order provides specific dates for the parties to exchange initial and rebuttal expert reports setting forth detailed opinions and rebuttal opinions of their respective experts on validity issues, and it is unfairly burdensome, unreasonable and prejudicial to ask for detailed information on invalidity contentions prior to the completion of these expert reports. BSC expressly reserves its rights to update its responses to these interrogatories, including through the methods and on the dates established in the Scheduling Order.

BSC further objects to this interrogatory to the extent that it seeks information that is covered by the attorney-client privilege, work product doctrine, or similar immunities.

Subject to the foregoing General Objections and specific objections, BSC states that, as presently advised:

U.S. Patent No. 7,217,286

The asserted claims of U.S. Patent No. 7,217,286 (the "'7286 patent") are invalid under 35 U.S.C. § 112 ¶ 1 for lack of enablement and failure to satisfy the written description

6

requirement. The claims of the '7286 patent are also invalid under 35 U.S.C. § 112 ¶ 2 because they are indefinite.

Moreover, the asserted claims of the '7286 patent are invalid under 35 U.S.C. §§ 102 and/or 103 based on the following prior art (including any foreign counterparts thereof): U.S. Patent Nos. 4,753,652; 5,102,417; 5,180,366; 5,199,951; 5,252,579; 5,256,790; 5,288,711; 5,356,433; 5,362,718; 5,378,836; 5,385,908; 5,385,909; 5,385,910; 5,387,680; 5,389,639; 5,391,730; 5,441,977; 5,464,650; 5,491,231; 5,504,091; 5,508,286; 5,512,055; 5,516,781; 5,525,610; 5,541,191; 5,545,208; 5,562,922; 5,563,145; 5,591,227; 5,624,411; 5,665,591; 5,665,772; 5,679,400; 5,780,462; 5,837,313; 6,096,070; 6,120,536; 6,384,046; WO 97/035575; EP 0551182; EP 0747069; WO 91/12779; WO 91/17724; WO 96/32907; J.R. Robinson (ed.), "Sustained and Controlled Release Drug Delivery Systems," New York, Marcel Dekker, 1978 (Chapters 1–2, 4, and 7–9); R. Langer, "Polymeric Delivery Systems for Controlled Drug Release," Chemical Engineering Communications, Vol. 6, 1980, pp. 1–48; J. Kost et al., "Controlled Release of Bioactive Agents," Trends in Biotechnology, Vol. 2, No. 2, 1984, pp. 47–51; M. Poon et al., "Rapamycin Inhibits Vascular Smooth Muscle Cell Migration," J. Clin. Invest., Vol. 98, No. 10, November 1996, pp. 2277–83; C.R. Gregory et al., "Effects of Treatment with Cyclosporine, FK 506, Rapamycin, Mycophenolic acid, or Deoxyspergualin on Vascular Muscle Proliferation In Vitro and In Vivo," Transplantation Proceedings. Vol. 25, No. 1, February 1993, pp. 770–71; C.R. Gregory et al., "Treatment With Rapamycin Blocks Arterial Intimal Thickening Following Mechanical and Alloimmune Injury," Transplantation Proceedings, Vol. 25, No. 1, February 1993, pp. 120–21; C.R. Gregory et al., "Rapamycin Inhibits Arterial Intimal Thickening Caused By Both Alloimmune And Mechanical Injury," Transplantation, Vol. 55, No. 6, June 1993, pp. 1409–18; S.O. Marx et al., "Rapamycin-FKBP Inhibits Cell Cycle Regulators of Proliferation in Vascular Smooth Muscle Cells," Circulation

7

Research, Vol. 76, No. 3, March 1995, pp. 412–18; A.R. Marks, "Attacking Heart Disease with Novel Molecular Tools," Bulletin of the New York Academy of Medicine, Vol. 73, No. 1, Summer 1996, pp. 25–36.  BSC further incorporates by reference any art cited or discussed during the prosecution of the '7286 patent.  Additionally, BSC has produced and/or will produce documents pursuant to Fed. R. Civ. P. 33(d).

U.S. Patent No. 7,223,286

The asserted claims of U.S. Patent No. 7,223,286 (the "'3286 patent) are invalid under 35 U.S.C. § 112 ¶ 1 for lack of enablement and failure to satisfy the written description requirement. The asserted claims of the '3286 patent are also invalid under 35 U.S.C. § 112 ¶ 2 because they are indefinite.

Moreover, the asserted claims of the '3286 patent are invalid under 35 U.S.C. §§ 102 and/or 103 based on the following prior art (including any foreign counterparts thereof): U.S. Patent Nos. 4,753,652; 5,102,417; 5,180,366; 5,199,951; 5,252,579; 5,256,790; 5,288,711; 5,356,433; 5,362,718; 5,378,836; 5,385,908; 5,385,909; 5,385,910; 5,387,680; 5,389,639; 5,391,730; 5,441,977; 5,464,650; 5,491,231; 5,504,091; 5,508,286; 5,512,055; 5,516,781; 5,525,610; 5,541,191; 5,545,208; 5,562,922; 5,563,145; 5,591,227; 5,624,411; 5,665,591; 5,665,772; 5,679,400; 5,780,462; 5,837,313; 6,096,070; 6,120,536; 6,384,046; WO 97/035575; EP 0551182; EP 0747069; WO 91/12779; WO 91/17724; WO 96/32907; J.R. Robinson (ed.), "Sustained and Controlled Release Drug Delivery Systems," New York, Marcel Dekker, 1978 (Chapters 1–2, 4, and 7–9); R. Langer, "Polymeric Delivery Systems for Controlled Drug Release," Chemical Engineering Communications, Vol. 6, 1980, pp. 1–48; J. Kost et al., "Controlled Release of Bioactive Agents," Trends in Biotechnology, Vol. 2, No. 2, 1984, pp. 47–51; M. Poon et al., "Rapamycin Inhibits Vascular Smooth Muscle Cell Migration," J. Clin. Invest., Vol. 98, No. 10, November 1996, pp. 2277–83; C.R. Gregory et al., "Effects of

Treatment with Cyclosporine, FK 506, Rapamycin, Mycophenolic acid, or Deoxyspergualin on

Vascular Muscle Proliferation In Vitro and In Vivo," Transplantation Proceedings. Vol. 25, No.

1, February 1993, pp. 770–71; C.R. Gregory et al., "Treatment With Rapamycin Blocks Arterial

Intimal Thickening Following Mechanical and Alloimmune Injury," Transplantation

Proceedings, Vol. 25, No. 1, February 1993, pp. 120–21; C.R. Gregory et al., "Rapamycin

Inhibits Arterial Intimal Thickening Caused By Both Alloimmune And Mechanical Injury,"

Transplantation, Vol. 55, No. 6, June 1993, pp. 1409–18; S.O. Marx et al., "Rapamycin-FKBP

Inhibits Cell Cycle Regulators of Proliferation in Vascular Smooth Muscle Cells," Circulation

Research, Vol. 76, No. 3, March 1995, pp. 412–18; A.R. Marks, "Attacking Heart Disease with

Novel Molecular Tools," Bulletin of the New York Academy of Medicine, Vol. 73, No. 1,

Summer 1996, pp. 25–36. BSC further incorporates by reference any art cited or discussed

during the prosecution of the '3286 patent. Additionally, BSC has produced and/or will produce

documents pursuant to Fed. R. Civ. P. 33(d).

U.S. Patent No. 7,229,473

The asserted claims of U.S. Patent No. 7,229,473 (the "'473 patent") are invalid under 35

U.S.C. § 112 ¶ 1 for lack of enablement and failure to satisfy the written description requirement.

The asserted claims of the '473 patent are also invalid under 35 U.S.C. § 112 ¶ 2 because they

are indefinite.

Moreover, the asserted claims of the '473 patent are invalid under 35 U.S.C. §§ 102

and/or 103 based on the following prior art (including any foreign counterparts thereof): U.S.

Patent Nos. 4,753,652; 5,102,417; 5,180,366; 5,199,951; 5,252,579; 5,256,790; 5,288,711;

5,356,433; 5,362,718; 5,378,836; 5,385,908; 5,385,909; 5,385,910; 5,387,680; 5,389,639;

5,391,730; 5,441,977; 5,464,650; 5,491,231; 5,504,091; 5,508,286; 5,512,055; 5,516,781;

5,525,610; 5,541,191; 5,545,208; 5,562,922; 5,563,145; 5,591,227; 5,624,411; 5,665,591;

5,665,772; 5,679,400; 5,780,462; 5,837,313; 6,096,070; 6,120,536; 6,384,046; WO 97/035575; EP 0551182; EP 0747069; WO 91/12779; WO 91/17724; WO 96/32907; J.R. Robinson (ed.), "Sustained and Controlled Release Drug Delivery Systems," New York, Marcel Dekker, 1978 (Chapters 1–2, 4, and 7–9); R. Langer, "Polymeric Delivery Systems for Controlled Drug Release," Chemical Engineering Communications, Vol. 6, 1980, pp. 1–48; J. Kost et al., "Controlled Release of Bioactive Agents," Trends in Biotechnology, Vol. 2, No. 2, 1984, pp. 47–51; M. Poon et al., "Rapamycin Inhibits Vascular Smooth Muscle Cell Migration," J. Clin. Invest., Vol. 98, No. 10, November 1996, pp. 2277–83; C.R. Gregory et al., "Effects of Treatment with Cyclosporine, FK 506, Rapamycin, Mycophenolic acid, or Deoxyspergualin on Vascular Muscle Proliferation In Vitro and In Vivo," Transplantation Proceedings. Vol. 25, No. 1, February 1993, pp. 770–71; C.R. Gregory et al., "Treatment With Rapamycin Blocks Arterial Intimal Thickening Following Mechanical and Alloimmune Injury," Transplantation Proceedings, Vol. 25, No. 1, February 1993, pp. 120–21; C.R. Gregory et al., "Rapamycin Inhibits Arterial Intimal Thickening Caused By Both Alloimmune And Mechanical Injury," Transplantation, Vol. 55, No. 6, June 1993, pp. 1409–18; S.O. Marx et al., "Rapamycin-FKBP Inhibits Cell Cycle Regulators of Proliferation in Vascular Smooth Muscle Cells," Circulation Research, Vol. 76, No. 3, March 1995, pp. 412–18; A.R. Marks, "Attacking Heart Disease with Novel Molecular Tools," Bulletin of the New York Academy of Medicine, Vol. 73, No. 1, Summer 1996, pp. 25–36. BSC further incorporates by reference any art cited or discussed during the prosecution of the '473 patent. Additionally, BSC has produced and/or will produce documents pursuant to Fed. R. Civ. P. 33(d).

U.S. Patent No. 7,300,662

The asserted claims of U.S. Patent No. 7,300,662 (the "'662 patent) are invalid under 35 U.S.C. § 112 ¶ 1 for lack of enablement and failure to satisfy the written description requirement.

The claims of the '662 patent are also invalid under 35 U.S.C. § 112 ¶ 2 because they are indefinite.

Moreover, the asserted claims of the '662 patent are invalid under 35 U.S.C. §§ 102 and/or 103 based on the following prior art (including any foreign counterparts thereof): U.S. Patent Nos. 4,753,652; 5,102,417; 5,180,366; 5,199,951; 5,252,579; 5,256,790; 5,288,711; 5,356,433; 5,362,718; 5,378,836; 5,385,908; 5,385,909; 5,385,910; 5,387,680; 5,389,639; 5,391,730; 5,441,977; 5,464,650; 5,491,231; 5,504,091; 5,508,286; 5,512,055; 5,516,781; 5,525,610; 5,541,191; 5,545,208; 5,562,922; 5,563,145; 5,591,227; 5,624,411; 5,665,591; 5,665,772; 5,679,400; 5,780,462; 5,837,313; 6,096,070; 6,120,536; 6,153,252; 6,384,046; 6,517,858; 7,048,939; WO/97/035575; WO 91/17724; WO 96/32907; J.R. Robinson (ed.), "Sustained and Controlled Release Drug Delivery Systems," New York, Marcel Dekker, 1978 (Chapters 1–2, 4, and 7–9); R. Langer, "Polymeric Delivery Systems for Controlled Drug Release," Chemical Engineering Communications, Vol. 6, 1980, pp. 1–48; J. Kost et al., "Controlled Release of Bioactive Agents," Trends in Biotechnology, Vol. 2, No. 2, 1984, pp. 47–51; C.R. Gregory et al., "Effects of Treatment with Cyclosporine, FK 506, Rapamycin, Mycophenolic acid, or Deoxyspergualin on Vascular Muscle Proliferation In Vitro and In Vivo," Transplantation Proceedings. Vol. 25, No. 1, February 1993, pp. 770–71. C.R. Gregory et al., "Treatment With Rapamycin Blocks Arterial Intimal Thickening Following Mechanical and Alloimmune Injury," Transplantation Proceedings, Vol. 25, No. 1, February 1993, pp. 120–21; C.R. Gregory et al., "Rapamycin Inhibits Arterial Intimal Thickening Caused By Both Alloimmune And Mechanical Injury," Transplantation, Vol. 55, No. 6, June 1993, pp. 1409–18; S.O. Marx et al., "Rapamycin-FKBP Inhibits Cell Cycle Regulators of Proliferation in Vascular Smooth Muscle Cells," Circulation Research, Vol. 76, No. 3, March 1995, pp. 412–18; A.R. Marks, "Attacking Heart Disease with Novel Molecular Tools," Bulletin of the New York

11

Academy of Medicine, Vol. 73, No. 1, Summer 1996, pp. 25–36; M. Poon et al., "Rapamycin

Inhibits Vascular Smooth Muscle Cell Migration," J. Clin. Invest., Vol. 98, No. 10, November

1996, pp. 2277–83; S. Elezi et al., "Vessel Size and Long-Term Outcome After Coronary Stent

Placement," Circulation, Vol. 98, November 1998, pp. 1875–80.  BSC further incorporates by

reference any art cited or discussed during the prosecution of the '662 patent.  Additionally, BSC

has produced and/or will produce documents pursuant to Fed. R. Civ. P. 33(d).

**Interrogatory No. 2**

  Separately for each asserted claim of the asserted patents in these actions (including U.S. Patent Nos. 7,217,286, 7,223,286, 7,229,473 and 7,300,662), set forth in detail the complete legal and factual bases for your allegation that you have not infringed the claims of those patents. Your description should include, without limitation:  an identification of each claim of the patents that you believe is not infringed; an identification, by name and model number, of each Accused Product that does not infringe each claim; and a chart identifying specifically which elements are present and not present within each Accused Product.  For each claim element, your chart should identify your construction of that claim element; an identification of any claim elements that you claim should be construed under Section 112, Paragraph 6 and the corresponding structure, material, or acts described in the specification and equivalents thereof; pinpoint cites to all evidence tending to support or refute your construction (e.g., the patent specification, related file history, dictionaries, and all other documents or expected testimony); an explanation of the basis for your claim that any differences between the claim element and the corresponding structure in (or method of using) the Accused Product are not insubstantial and that the claim element and the corresponding structure in (or method of using) the Accused Product do not perform substantially the same function in substantially the same way to achieve substantially the same result; and for each element that you claim is governed by 35 U.S.C. § 112, ¶ 6, an explanation of any reasons why the structure(s), act(s), or material(s) in the Accused product do not perform the claimed function.  Finally, your response should include an identification of all facts supporting your non-infringement allegations, all person knowledgeable of these facts, and all documents and communications concerning your non-infringement allegations in any way.

**Response to Interrogatory No. 2**

  BSC objects to this interrogatory as constituting multiple separate and distinct

interrogatories in violation of Fed. R. Civ. P. 33(a).  BSC objects to this interrogatory to the

extent it seeks information that is not relevant to the claims or defenses of the parties in this

    

action or the subject matter of this action. BSC objects to this interrogatory as vague and ambiguous to the extent the term "Accused Product" is not defined.

BSC objects to this interrogatory to the extent that it seeks information concerning non-asserted claims of the patents in suit and, accordingly, BSC will limit its response to those claims that have been identified by Cordis as asserted in these actions. BSC understands that the asserted claims are: claims 1-5 of U.S. Patent No. 7,217,286; claims 1, 2, 5–6, 9–10, 21, 25, 27, 28–41, 44, 47–48, 51–52, 63, 67, and 69–77 of U.S. Patent No. 7,223,286; claims 1–5 of U.S. Patent No. 7,229,473; and claims 1–3, 5–7, 9, 11, 13–15 and 17–25 of U.S. Patent No. 7,300,662.

BSC further objects to this interrogatory as premature as the case is still in the early phases of discovery and the information sought is not line with the sequence of information disclosure set up in the Court's Scheduling Order. With respect to claim construction, the Court's Scheduling Order provides a specific date for the parties to exchange proposed claim constructions, and it is unfairly burdensome, unreasonable and prejudicial to ask for detailed information regarding claim construction contentions prior to the date fixed by the Court. Similarly, the Court's Scheduling Order provides specific dates for the parties to exchange initial and rebuttal expert reports setting forth detailed opinions and rebuttal opinions of their respective experts on infringement issues, and it is unfairly burdensome, unreasonable and prejudicial to ask for detailed information on non-infringement contentions prior to the completion of these expert reports. BSC expressly reserves its rights to update its responses to these interrogatories, including through the methods and on the dates established in the Scheduling Order.

BSC further objects to this interrogatory to the extent that it seeks information that is covered by the attorney-client privilege, work product doctrine, or similar immunities.

DB01:2559282.1                                        054604.1003

Subject to the foregoing General Objections and specific objections, BSC states that, as presently advised:

U.S. Patent No. 7,217,286

The PROMUS stent does not infringe the asserted claims of the '7286 patent because the asserted claims of the '7286 patent are invalid for the above reasons, and invalid claims cannot be infringed. Moreover, the PROMUS stent does not infringe each of the asserted claims of the '7286 patent, literally or under the doctrine of equivalents, because the PROMUS stent does not meet every element in each of those claims, including, as presently advised, at least the following elements in those claims:

| Claim of the '7286 Patent | Missing Elements in the PROMUS Stent |
|---|---|
| 1. A device comprising a metallic stent, a biocompatible, nonabsorbable polymeric carrier, and a therapeutic agent, wherein: said polymeric carrier comprises an acrylate-based polymer or copolymer, a fluorinated polymer, or a mixture thereof, and said therapeutic agent is rapamycin, or a macrocyclic lactone analog thereof, and is present in an amount effective to inhibit neointimal proliferation. | PROMUS does not have:<br><br>(1) a "biocompatible, nonabsorbable polymeric carrier";<br>(2) a "polymeric carrier compris[ing] an acrylate-based polymer or copolymer, a fluorinated polymer, or a mixture thereof"; and<br>(3) a "therapeutic agent [that] is rapamycin, or a macrocyclic lactone analog thereof [that is] present in an amount effective to inhibit neointimal proliferation." |
| 2. The device according to claim 1 wherein said therapeutic agent is a macrocyclic lactone analog of rapamycin. | *See* answer to claim 1, above, and PROMUS does not have a "therapeutic agent [that] is a macrocyclic lactone analog of rapamycin.." |
| 3. The device according to claim 1 that provides a controlled release of said therapeutic agent over a period of several weeks. | *See* answer to claim 1, above, and PROMUS does not provide "controlled release . . . over a period of several weeks." |
| 4. The device according to claim 2 that provides a controlled release of said therapeutic agent over a period of several weeks. | *See* answer to claim 2, above, and PROMUS does not provide "controlled release . . . over a period of several weeks." |

| Claim of the '7286 Patent | Missing Elements in the PROMUS Stent |
|---|---|
| 5. A method of inhibiting neointimal proliferation in a coronary artery resulting from percutaneous transluminal coronary angioplasty comprising implanting a device according to any one of claims 1 to 4 in the lumen of said coronary artery. | PROMUS is not used in such a method – *see* answers to claims 1–4, above. |

U.S. Patent No. 7,223,286

The PROMUS stent does not infringe the asserted claims of the '3286 patent because the asserted claims of the '3286 patent are invalid for the above reasons, and invalid claims cannot be infringed. Moreover, the PROMUS stent does not infringe each of the asserted claims of the '3286 patent, literally or under the doctrine of equivalents, because the PROMUS stent does not meet every element in each of those claims, including, as presently advised, at least the following elements in those claims:

| Claim of the '3286 Patent | Missing Elements in the PROMUS Stent |
|---|---|
| 1. A stent having a coating applied thereto, wherein said coating comprises a biocompatible polymer/drug mixture and said drug is rapamycin or a macrocyclic lactone analog thereof. | PROMUS does not have:<br><br>(1) a "coating [that] comprises a biocompatible polymer/drug mixture"; where<br>(2) "said drug is rapamycin or a macrocyclic lactone analog thereof." |
| 2. A stent according to claim 1 comprising a generally thin walled cylinder containing a plurality of generally solid struts to which said coating is applied. | *See* answer to claim 1, above, and PROMUS does not have "a generally thin walled cylinder containing a plurality of generally solid struts to which said coating is applied". |
| 5. A stent according to claim 1 wherein the coating is dip-coated onto the stent. | *See* answer to claim 1, above, and PROMUS does not have such a "coating [that] is dip-coated onto the stent." |
| 6. A stent according to claim 1 wherein the coating is spray-coated onto the stent. | *See* answer to claim 1, above, and PROMUS does not have such a "coating [that] is spray-coated onto the stent." |

054604.1003

| Claim of the '3286 Patent | Missing Elements in the PROMUS Stent |
|---|---|
| 9. A stent according to claim 1 wherein the coating comprises a nonabsorbable polymer. | *See* answer to claim 1, above. |
| 10. A stent according to claim 1 wherein the coating comprises a lactone-based polyester; a lactone-based copolyester; a polyanhydride; a polyaminoacid; a polysaccharide; a polyphosphazene; a poly(ether-ester) copolymer; a polydimethylsiloxane; a poly(ethylene)vinylacetate; a poly(hydroxy)ethylmethylmethacrylate; an acrylate based polymer; an acrylate based copolymer; a polyvinyl pyrrolidone; a cellulose ester; a fluorinated polymer; or a blend thereof. | *See* answer to claim 1, above, and PROMUS does not have such a "coating [that] comprises a lactone-based polyester; a lactone-based copolyester; a polyanhydride; a polyaminoacid; a polysaccharide; a polyphosphazene; a poly(ether-ester) copolymer; a polydimethylsiloxane; a poly(ethylene)vinylacetate; a poly(hydroxy)ethylmethylmethacrylate; an acrylate based polymer; an acrylate based copolymer; a polyvinyl pyrrolidone; a cellulose ester; a fluorinated polymer; or a blend thereof." |
| 21. A stent according to claim 10 wherein the coating comprises an acrylate based polymer. | *See* answer to claim 10, above, and PROMUS does not have such a "coating [that] comprises an acrylate based polymer." |
| 25. A stent according to claim 10 wherein the coating comprises a fluorinated polymer. | *See* answer to claim 10, above, and PROMUS does not have such a "coating [that] comprises a fluorinated polymer." |
| 27. A stent according to any one of claims 1 to 26 wherein said drug is a macrocyclic lactone analog of rapamycin. | *See* each of the above answers for the asserted claims 1, 2, 5–6, 9–10, 21 and 25, and PROMUS does not have such a "drug [that] is a macrocyclic lactone analog of rapamycin." |
| 28. A stent according to any one of claims 1 to 26 that provides a controlled release of said rapamycin or macrocyclic lactone analog thereof over a period of several weeks. | *See* each of the above answers for the asserted claims 1, 2, 5–6, 9–10, 21 and 25, and PROMUS does not provide "controlled release . . . over a period of several weeks." |
| 29. A stent according to claim 28 wherein said drug is a macrocyclic lactone analog of rapamycin. | *See* answer to claim 28, above, and PROMUS does not have such a "drug [that] is a macrocyclic lactone analog of rapamycin." |
| 30. A stent according to any one of claims 1 to 26 that releases said rapamycin or macrocyclic lactone analog thereof over a period of at least 14 days. | *See* each of the above answers for the asserted claims 1, 2, 5–6, 9–10, 21 and 25. |

DB01:2559282.1                                                                                          054604.1003

| Claim of the '3286 Patent | Missing Elements in the PROMUS Stent |
|---|---|
| 31. A stent according to claim 30 wherein said drug is a macrocyclic lactone analog of rapamycin. | *See* answer to claim 30, above, and PROMUS does not have such a "drug [that] is a macrocyclic lactone analog of rapamycin." |
| 32. A stent according to any one of claims 1 to 26 wherein said rapamycin or macrocyclic lactone analog thereof is present in a therapeutically beneficial amount to inhibit neointimal proliferation. | *See* each of the above answers for the asserted claims 1, 2, 5–6, 9–10, 21 and 25, and PROMUS does not have a "rapamycin or macrocyclic lactone analog thereof [that is]present in a therapeutically beneficial amount to inhibit neointimal proliferation." |
| 33. A stent according to claim 32 wherein said drug is a macrocyclic lactone analog of rapamycin. | *See* answer to claim 32, above, and PROMUS does not have such a "drug [that] is a macrocyclic lactone analog of rapamycin." |
| 34. A stent according to claim 33 that releases said macrocyclic lactone analog of rapamycin over a period of at least 14 days. | *See* answer to claim 33, above. |
| 35. A stent according to claim 34 wherein the coating comprises a fluorinated polymer. | *See* answer to claim 34, above, and PROMUS does not have such a "coating [that] comprises a fluorinated polymer." |
| 36. A stent according to claim 35 wherein the coating further comprises an acrylate based polymer or copolymer. | *See* answer to claim 35, above, and PROMUS does not have such a "coating [that] further comprises an acrylate based polymer or copolymer." |
| 37. A stent according to claim 33 that provides a controlled release of said rapamycin or macrocyclic lactone analog thereof over a period of several weeks. | *See* answer to claim 33, above, and PROMUS does not provide "controlled release . . . over a period of several weeks." |
| 38. A stent according to claim 37 wherein the coating comprises a fluorinated polymer. | *See* answer to claim 37, above, and PROMUS does not have such a "coating [that] comprises a fluorinated polymer." |
| 39. A stent according to claim 38 wherein the coating further comprises an acrylate based polymer or copolymer. | "*See* answer to claim 37, above, and PROMUS does not have such a "coating [that] further comprises an acrylate based polymer or copolymer." |

17

| Claim of the '3286 Patent | Missing Elements in the PROMUS Stent |
|---|---|
| 40. A device comprising a metallic stent, a biocompatible polymeric carrier and a drug, wherein said drug is rapamycin or a macrocyclic lactone analog thereof and is present in an amount effective to inhibit neointimal proliferation. | PROMUS does not have:<br><br>(1) "a biocompatible polymeric carrier"; and (2) a "drug [that] is rapamycin or a macrocyclic lactone analog thereof [that is] present in an amount effective to inhibit neointimal proliferation." |
| 41. A device according to claim 40 wherein said polymeric carrier and drug are mixed together. | *See* answer to claim 40, above. |
| 44. A device according to claim 40 wherein said stent comprises a generally thin walled cylinder containing a plurality of generally solid struts to which said polymeric carrier and drug are applied. | *See* answer to claim 40, above, and PROMUS does not have "a generally thin walled cylinder containing a plurality of generally solid struts to which said polymeric carrier and drug are applied." |
| 47. A device according to claim 40 wherein the polymeric carrier and drug are dip-coated onto the stent. | *See* answer to claim 40, above, and PROMUS does not have such a "polymeric carrier and drug [that] are dip-coated onto the stent." |
| 48. A device according to claim 40 wherein the polymeric carrier and drug are spray-coated onto the stent. | *See* answer to claim 40, above, and PROMUS does not have such a "polymeric carrier and drug [that] are spray-coated onto the stent." |
| 51. A device according to claim 40 wherein the polymeric carrier comprises a nonabsorbable polymer. | *See* answer to claim 40, above. |
| 52. A device according to claim 40 wherein the polymeric carrier comprises a lactone-based polyester; a lactone-based copolyester; a polyanhydride; a polyaminoacid; a polysaccharide; a polyphosphazene; a poly(ether-ester) copolymer; a polydimethylsiloxane; a poly(ethylene)vinylacetate; a poly(hydroxy)ethylmethylmethacrylate; an acrylate based polymer; an acrylate based copolymer; a polyvinyl pyrrolidone; a cellulose ester; a fluorinated polymer; or a blend thereof. | *See* answer to claim 40, above, and PROMUS does not have such a "polymeric carrier [that] comprises a lactone-based polyester; a lactone-based copolyester; a polyanhydride; a polyaminoacid; a polysaccharide; a polyphosphazene; a poly(ether-ester) copolymer; a polydimethylsiloxane; a poly(ethylene)vinylacetate; a poly(hydroxy)ethylmethylmethacrylate; an acrylate based polymer; an acrylate based copolymer; a polyvinyl pyrrolidone; a cellulose ester; a fluorinated polymer; or a blend thereof." |

DB01:2559282.1

054604.1003

| Claim of the '3286 Patent | Missing Elements in the PROMUS Stent |
|---|---|
| 63. A device according to claim 52 wherein the polymeric carrier comprises an acrylate based polymer. | *See* answer to claim 52, above, and PROMUS does not have such a "polymeric carrier [that] comprises an acrylate based polymer." |
| 67. A device according to claim 52 wherein the polymeric carrier comprises a fluorinated polymer. | *See* answer to claim 52, above, and PROMUS does not have such a "polymeric carrier [that] comprises a fluorinated polymer." |
| 69. A device according to any one of claims 40 to 68 wherein said drug is a macrocyclic lactone analog of rapamycin. | *See* each of the above answers for the asserted claims 41, 44, 47–48, 51–52, 63 and 67, and PROMUS does not have such a "drug [that] is a macrocyclic lactone analog of rapamycin." |
| 70. A device according to any one of claims 40 to 68 that provides a controlled release of said rapamycin or macrocyclic lactone analog thereof over a period of several weeks. | *See* each of the above answers for the asserted claims 41, 44, 47–48, 51–52, 63 and 67, and PROMUS does not provide "controlled release . . . over a period of several weeks." |
| 71. A device according to claim 70 wherein said drug is a macrocyclic lactone analog of rapamycin. | *See* answer to claim 70, above, and PROMUS does not have such a "drug [that] is a macrocyclic lactone analog of rapamycin." |
| 72. A device according to claim 71 wherein the polymeric carrier comprises a fluorinated polymer. | *See* answer to claim 71, above, and PROMUS does not have such a "polymeric carrier [that] comprises a fluorinated polymer." |
| 73. A device according to claim 72 wherein the polymeric carrier further comprises an acrylate based polymer or copolymer. | *See* answer to claim 71, above, and PROMUS does not have such a "polymeric carrier [that] further comprises an acrylate based polymer or copolymer." |
| 74. A device according to any one of claims 40 to 68 that releases said drug over a period of at least 14 days. | *See* each of the above answers for the asserted claims 41, 44, 47–48, 51–52, 63 and 67. |
| 75. A device according to claim 74 wherein said drug is a macrocyclic lactone analog of rapamycin. | *See* answer to claim 74, above, and PROMUS does not have such a "drug [that] is a macrocyclic lactone analog of rapamycin." |
| 76. A device according to claim 75 wherein the polymeric carrier comprises a fluorinated polymer. | *See* answer to claim 75, above, and PROMUS does not have such a "polymeric carrier [that] comprises a fluorinated polymer." |

DB01:2559282.1    054604.1003

| Claim of the '3286 Patent | Missing Elements in the PROMUS Stent |
|---|---|
| 77. A device according to claim 76 wherein the polymeric carrier further comprises an acrylate based polymer or copolymer. | *See* answer to claim 76, above, and PROMUS does not have such a "polymeric carrier [that] further comprises an acrylate based polymer or copolymer." |

U.S. Patent No. 7,229,473

The PROMUS stent does not infringe the asserted claims of the '473 patent because the asserted claims of the '473 patent are invalid for the above reasons, and invalid claims cannot be infringed. Moreover, the PROMUS stent does not infringe each of the asserted claims of the '473 patent, literally or under the doctrine of equivalents, because the PROMUS stent does not meet every element in each of those claims, including, as presently advised, at least the following elements in those claims:

| Claim of the '473 Patent | Missing Elements in the PROMUS Stent |
|---|---|
| 1. A metallic stent having a coating applied thereto, wherein: said coating comprises a mixture of a biocompatible polymeric carrier and a therapeutic agent; said polymeric carrier comprises at least one nonabsorbable polymer; said therapeutic agent is rapamycin, or a macrocyclic lactone analog thereof, present in an amount effective to inhibit neointimal proliferation; and said stent provides a controlled release of said therapeutic agent over a period of several weeks. | PROMUS does not have:<br><br>(1) a "coating [that] comprises a mixture of a biocompatible polymeric carrier and a therapeutic agent"; and<br>(2) a "therapeutic agent [that] is rapamycin, or a macrocyclic lactone analog thereof [that is] present in an amount effective to inhibit neointimal proliferation".<br><br>PROMUS does not provide "controlled release . . . over a period of several weeks." |
| 2. The metallic stent according to claim 1 wherein said therapeutic agent is a macrocyclic lactone analog of rapamycin. | *See* answer to claim 1, above, and PROMUS does not have such a "therapeutic agent [that] is a macrocyclic lactone analog of rapamycin." |
| 3. The metallic stent according to claim 1 wherein said biocompatible polymeric carrier comprises a fluorinated polymer. | *See* answer to claim 1, above, and PROMUS does not have such a "biocompatible polymeric carrier [that] comprises a fluorinated polymer." |

20

| Claim of the '473 Patent | Missing Elements in the PROMUS Stent |
|---|---|
| 4. The metallic according to claim 3 wherein said biocompatible polymeric carrier further comprises an acrylate-based polymer or copolymer. | *See* answer to claim 3, above, and PROMUS does not have such a "biocompatible polymeric carrier [that] further comprises an acrylate-based polymer or copolymer." |
| 5. A method of inhibiting neointimal proliferation in a coronary artery resulting from percutaneous transluminal coronary angioplasty comprising implanting a metallic stent according to any one of claims 1 to 4 in the lumen of said coronary artery. | *See* each of the above answers for the asserted claims 1-4, PROMUS is not used in such a method does not have such a "biocompatible polymeric carrier [that] further comprises an acrylate-based polymer or copolymer." |

U.S. Patent No. 7,300,662

The PROMUS stent does not infringe the asserted claims of the '662 patent because the asserted claims of the '662 patent are invalid for the above reasons, and invalid claims cannot be infringed. Moreover, the PROMUS stent does not infringe each of the asserted claims of the '662 patent, literally or under the doctrine of equivalents, because the PROMUS stent does not meet every element in each of those claims, including, as presently advised, at least the following elements in those claims:

| Claim of the '662 Patent | Missing Elements in the PROMUS Stent |
|---|---|
| 1. A drug delivery device comprising: an intraluminal stent; a biocompatible, nonerodible polymeric coating affixed to the intraluminal stent; and from about 64 μg to about 197 μg of rapamycin or a macrocyclic triene analog thereof that binds FKBP12 incorporated into the polymeric coating, wherein said device provides an in-stent late loss in diameter at 12 months following implantation in a human of less than about 0.5 mm, as measured by quantitative coronary angiography. | PROMUS does not have: (1) "a biocompatible, nonerodible polymeric coating affixed to the intraluminal stent"; and (2) "from about 64 μg to about 197 μg of rapamycin or a macrocyclic triene analog thereof that binds FKBP12 incorporated into the polymeric coating". PROMUS does not provide "an in-stent late loss in diameter at 12 months following implantation in a human of less than about 0.5 mm, as measured by quantitative coronary angiography." |

| Claim of the '662 Patent | Missing Elements in the PROMUS Stent |
|---|---|
| 2. A drug delivery device according to claim 1 that provides an in- stent late loss in diameter at 12 months following implantation in a human of less than about 0.3 mm, as measured by quantitative coronary angiography. | *See* answer to claim 1, above, and PROMUS does not "provide[] an in- stent late loss in diameter at 12 months following implantation in a human of less than about 0.3 mm, as measured by quantitative coronary angiography." |
| 3. A drug delivery device according to claim 1 or 2 that provides an in-stent diameter stenosis at 12 months following implantation in a human of less than about 22%, as measured by quantitative coronary angiography. | *See* answers to claims 1–2, above, and PROMUS does not "provide[] an in-stent diameter stenosis at 12 months following implantation in a human of less than about 22%, as measured by quantitative coronary angiography." |
| 5. A drug delivery device comprising: an intraluminal stent; a biocompatible, nonerodible polymeric coating affixed to the intraluminal stent; and from about 64 μg to about 197 μg of rapamycin or a macrocyclic triene analog thereof that binds FKBP12 incorporated into the polymeric coating, wherein said device provides a mean in-stent late loss in diameter in a human population at 12 months following implantation of less than about 0.5 mm, as measured by quantitative coronary angiography. | PROMUS does not have:<br><br>(1) "a biocompatible, nonerodible polymeric coating affixed to the intraluminal stent"; and (2) "from about 64 μg to about 197 μg of rapamycin or a macrocyclic triene analog thereof that binds FKBP12 incorporated into the polymeric coating"<br><br>PROMUS does not provide:  "a mean in-stent late loss in diameter in a human population at 12 months following implantation of less than about 0.5 mm, as measured by quantitative coronary angiography." |
| 6. A drug delivery device according to claim 5 that provides a mean in-stent late loss in diameter in a human population at 12 months following implantation of less than about 0.3 mm, as measured by quantitative coronary angiography. | *See* answer to claim 5, above, and PROMUS does not "provide[] a mean in-stent late loss in diameter in a human population at 12 months following implantation of less than about 0.3 mm, as measured by quantitative coronary angiography." |
| 7. A drug delivery device according to claim 5 or 6 that provides a mean in-stent diameter stenosis in a human population at 12 months following implantation of less than about 22%, as measured by quantitative coronary angiography. | *See* answers to claims 5–6, above, and PROMUS does not "provide[] a mean in-stent diameter stenosis in a human population at 12 months following implantation of less than about 22%, as measured by quantitative coronary angiography." |

DB01:2559282.1

054604.1003

| Claim of the '662 Patent | Missing Elements in the PROMUS Stent |
|---|---|
| 9. A method of inhibiting neointimal proliferation in a human coronary artery resulting from percutaneous transluminal coronary angioplasty comprising implanting in the lumen of said coronary artery a drug delivery device comprising: an intraluminal stent; a biocompatible, nonerodible polymeric coating affixed to the intraluminal stent; and from about 64 µg to about 197 µg of rapamycin or a macrocyclic triene analog thereof that binds FKBP12 incorporated into the polymeric coating, wherein said method provides an in-stent late loss in diameter at 12 months following implantation of less than about 0.5 mm, as measured by quantitative coronary angiography. | PROMUS is not used in such a method and does not have:<br><br>(1) "a biocompatible, nonerodible polymeric coating affixed to the intraluminal stent"; and (2) "from about 64 µg to about 197 µg of rapamycin or a macrocyclic triene analog thereof that binds FKBP12 incorporated into the polymeric coating".<br><br>PROMUS does not provide "an in-stent late loss in diameter at 12 months following implantation of less than about 0.5 mm, as measured by quantitative coronary angiography." |
| 10. A method according to claim 9 that provides an in-stent late loss in diameter at 12 months following implantation of less than about 0.3 mm, as measured by quantitative coronary angiography. | *See* answer to claim 9, above, and PROMUS does not "provide[] an in-stent late loss in diameter at 12 months following implantation of less than about 0.3 mm, as measured by quantitative coronary angiography." |
| 11. A method according to claim 9 or 10 that provides an in-stent diameter stenosis at 12 months following implantation of less than about 22%, as measured by quantitative coronary angiography. | *See* answers to claims 9–10, above, and PROMUS does not "provide[] an in-stent diameter stenosis at 12 months following implantation of less than about 22%, as measured by quantitative coronary angiography." |

DB01:2559282.1

054604.1003

| Claim of the '662 Patent | Missing Elements in the PROMUS Stent |
|---|---|
| 13. A method of inhibiting neointimal proliferation in a coronary artery resulting from percutaneous transluminal coronary angioplasty comprising implanting in the lumen of said coronary artery a drug delivery device comprising: an intraluminal stent; a biocompatible, nonerodible polymeric coating affixed to the intraluminal stent; and from about 64 µg to about 197 µg of rapamycin or a macrocyclic triene analog thereof that binds FKBP12 incorporated into the polymeric coating, wherein said method provides a mean in-stent late loss in diameter in a human population at 12 months following implantation of less than about 0.5 mm, as measured by quantitative coronary angiography. | PROMUS is not used in such a method and does not have:<br><br>(1) "a biocompatible, nonerodible polymeric coating affixed to the intraluminal stent"; and (2) "from about 64 µg to about 197 µg of rapamycin or a macrocyclic triene analog thereof that binds FKBP12 incorporated into the polymeric coating"<br><br>PROMUS does not "provide[] a mean in-stent late loss in diameter in a human population at 12 months following implantation of less than about 0.5 mm, as measured by quantitative coronary angiography." |
| 14. A method according to claim 13 that provides a mean in-stent late loss in diameter in a human population at 12 months following implantation of less than about 0.3 mm, as measured by quantitative coronary angiography. | *See* answer to claim 5, above, and PROMUS does not "provide[] a mean in-stent late loss in diameter in a human population at 12 months following implantation of less than about 0.3 mm, as measured by quantitative coronary angiography." |
| 15. A method according to claim 13 or 14 that provides a mean in-stent diameter stenosis in a human population at 12 months following implantation of less than about 22%, as measured by quantitative coronary angiography. | *See* answers to claims 13–14, above, and PROMUS does not "provide[] a mean in-stent diameter stenosis in a human population at 12 months following implantation of less than about 22%, as measured by quantitative coronary angiography." |
| 17. The drug delivery device according to any one of claims 1, 2, 4 or 5 wherein said rapamycin or macrocyclic triene analog thereof is incorporated into the polymeric coating at a dose of from about 64 µg to about 125 µg. | *See* answers to asserted claims 1, 2 and 5, above, and PROMUS does not have such a "rapamycin or macrocyclic triene analog thereof [that] is incorporated into the polymeric coating at a dose of from about 64 µg to about 125 µg." |
| 18. The drug delivery device according to any one of claims 1, 2, 4 or 5 that releases a portion of said dose of rapamycin or a macrocyclic triene analog thereof at about six weeks following intraluminal implantation. | *See* answers to asserted claims 1, 2 and 5, above. |

DB01:2559282.1

054604.1003

| Claim of the '662 Patent | Missing Elements in the PROMUS Stent |
|---|---|
| 19. The drug delivery device according to any one of claims 1, 2, 4 or 5 wherein said rapamycin or macrocyclic triene analog thereof is incorporated into the polymeric coating at a dose of from about 2 µg to about 30 µg per millimeter of stent length. | *See* answers to asserted claims 1, 2 and 5, above. |
| 20. The drug delivery device according to claim 19 wherein said rapamycin or macrocyclic triene analog thereof is incorporated into the polymeric coating at a dose of from about 3 µg to about 13 µg per millimeter of stent length. | *See* answer to claim 19, above. |
| 21. The drug delivery device according to claim 19 that releases a portion of said dose of rapamycin or a macrocyclic triene analog thereof at about six weeks following intraluminal implantation. | *See* answer to claim 19, above. |
| 22. The method according to any one of claims 9, 10, 13 or 14, wherein said rapamycin or macrocyclic triene analog thereof is incorporated into the polymeric coating at a dose of from about 64 µg to about 125 µg. | *See* answers to asserted claims 9–10 and 13–14, above, and PROMUS does not have such a "rapamycin or macrocyclic triene analog thereof [that] is incorporated into the polymeric coating at a dose of from about 64 µg to about 125 µg." |
| 23. The method according to any one of claims 9, 10, 13 or 14, wherein said rapamycin or macrocyclic triene analog thereof is incorporated into the polymeric coating at a dose of from about 2 µg to about 30 µg per millimeter of stent length. | *See* answers to asserted claims 9–10 and 13–14, above. |
| 24. The method according to any one of claims 9, 10, 13 or 14, wherein said rapamycin or macrocyclic triene analog thereof is incorporated into the polymeric coating at a dose of from about 3 µg to about 13 µg per millimeter of stent length. | *See* answers to asserted claims 9–10 and 13–14, above. |

DB01:2559282.1

054604.1003

| Claim of the '662 Patent | Missing Elements in the PROMUS Stent |
|---|---|
| 25. The method according to any one of claims 9, 10, 13 or 14, wherein said drug delivery device releases a portion of said dose of rapamycin or a macrocyclic triene analog thereof at about six weeks following intraluminal implantation. | *See* answers to asserted claims 9–10 and 13–14, above. |

## Interrogatory No. 3

For each BSC employee who may present evidence at trial under Rules 702, 703 or 705 of the Federal Rules of Evidence, please provide:

(a)    a complete statement of all opinions to be expressed by the employee and the basis and reasons therefore;

(b)    a complete statement of all data or other information considered by the employee in forming the opinions;

(c)    a complete statement of the qualifications of the employee, including a list of all publications authored by the employee within the preceding ten years;

(d)    a complete statement of the compensation to be paid to the employee for the study and testimony;

(e)    and a complete listing of any other cases in which the employee has provided testimony under Rules 702, 703 or 705 of the Federal Rules of Evidence at trial or by deposition within the preceding four years.

## Response to Interrogatory No. 3

BSC objects to this interrogatory as constituting multiple separate and distinct interrogatories in violation of Fed. R. Civ. P. 33(a). BSC objects to this interrogatory as premature, as trial is not scheduled until August, 2009 and BSC's trial strategy is not yet fully developed. BSC also objects to this interrogatory to the extent it seeks information that is not relevant to the claims or defenses of the parties in this action or the subject matter of this action. BSC further objects to this interrogatory to the extent that it seeks information that is covered by the attorney-client privilege, work product doctrine, or similar immunities.

054604.1003

Subject to the foregoing General Objections and specific objections, BSC states that, as presently advised, it does not currently intend to have any BSC employees present evidence at trial under Fed. R. Evid. 702, 703 or 705.

As to objections:

*/s/ Karen E. Keller*

Josy W. Ingersoll (No. 1088)
Karen L. Pascale (No. 2903)
Karen E. Keller (No. 4489)
Andrew A. Lundgren (No. 4429)
YOUNG CONAWAY STARGATT &
    TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
jingersoll@ycst.com
kpascale@ycst.com
kkeller@ycst.com
alundgren@ycst.com
(302) 571-6600

*Attorneys for Plaintiffs*
*Boston Scientific Corporation and*
*Boston Scientific Scimed, Inc.*

*Of Counsel:*
Richard L. Delucia
Paul M. Richter
Michael K. Levy
Jerry Canada
KENYON & KENYON LLP
One Broadway
New York, NY 10004
(212) 425-7200

Dated: June 9, 2008

DB01:2559282.1                                              054604.1003

## CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire, hereby certify that on June 9, 2008, I caused true and correct copies of the foregoing document to be served upon the following counsel of record in the manner indicated:

### *By Hand Delivery and E-Mail*

Steven J. Balick, Esquire [sbalick@ashby-geddes.com]
John G. Day, Esquire [jday@ashby-geddes.com]
Lauren E. Maguire [lmaguire@ashby-geddes.com]
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801

### *By E-Mail*

David T. Pritikin, Esquire [dpritikin@sidley.com]
William H. Baumgartner, Esquire [wbaumgartner@sidley.com]
Paul E. Veith, Esquire [pveith@sidley.com]
Russell E. Cass, Esquire [rcass@sidley.com]
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Karen E. Keller*

Karen L. Pascale (No. 2903) [kpascale@ycst.com]
Karen E. Keller (No. 4489) [kkeller@ycst.com
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
*Attorneys for Plaintiffs,*
*Boston Scientific Corporation and*
*Boston Scientific Scimed, Inc.*